UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 2 9 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
APR 3 0 2004

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 03 CR 670-1 |
| ) | Judge Blanche M. Manning |
| GUADALUPE CISNEROS-MORA ) | |

PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, GUADALUPE CISNEROS-MORA, and his attorney, JOSEPH R. LOPEZ, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 03 CR 670-1.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant,

GUADALUPE CISNEROS-MORA, and his attorney, JOSEPH R. LOPEZ, have agreed upon the following:

1. Defendant acknowledges that he has been charged in an indictment in this case with conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine in violation of Title 21, United States Code, Section 846 (Count One); with four counts of possession with intent to distribute in excess of five kilograms of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Two, Three, Five, and Eight); and with three counts of using a communications facility to cause and facilitate the charged drug conspiracy, in violation of Title 21, United States Code, Section 843(b) (Counts Four, Six, and Seven).

2. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count One of the indictment.

5. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

2

Beginning in or about June 2002 and continuing until July 8, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant conspired and agreed with Gilberto Ramirez-Arroyo, Frank Sroka, Jesus Del Castillo, Francisco Javier Cerrato, and others known and unknown to the Grand Jury, knowingly and intentionally to possess with the intent to distribute and to distribute controlled substances, namely, in excess of five kilograms of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846.

More specifically, in or about June 2002, defendant was part of an organization that transported cocaine into the Chicago area aboard tractor-trailer trucks. Defendant approached Frank Sroka, who was plant manager at Jarke Corporation, a Niles, Illinois, business that formerly employed defendant. Defendant and Sroka agreed that defendant would pay Sroka to make the loading docks at the Jarke Corporation warehouse ("the Niles warehouse") available to defendant for the purpose of unloading cocaine from commercial trucks. Defendant paid Sroka amounts ranging from about $1,000 to $3,000 in cash for each of 10 to 15 occasions when Sroka provided defendant with access to the Niles warehouse between June 2002 and July 8, 2003.

On those occasions, defendant, accompanied by other individuals including Ramirez-Arroyo, arrived at the Niles

warehouse after business hours for the purpose of unloading cocaine from commercial trucks which were driven to the Niles warehouse location. Defendant participated in the off-loading of the cocaine loads, which included quantities of more than 400 kilograms at a time. Defendant also assisted in the transportation of the cocaine to apartments in the Chicago and Skokie areas so that the cocaine could be stored at those locations before being distributed to the organization's wholesale customers.

Shortly before July 5, 2003, defendant obtained from Sroka a key to the Jarke warehouse, in anticipation of a shipment of cocaine on or about July 5. On July 5, defendant, Ramirez-Arroyo, and a person identified herein as Individual A, arrived at the Jarke warehouse and unloaded approximately 360 kilograms of cocaine from a truck driven by co-defendant Francisco Javier Cerrato. Defendant, Ramirez-Arroyo, and Individual A transported the cocaine to an apartment in the 8000 block of Knox Avenue in Skokie, Illinois, for storage prior to the distribution of the cocaine to other individuals.

Defendant retained the warehouse key in anticipation of another shipment on July 8, 2003. On the night of July 8, defendant and Ramirez-Arroyo arrived at the warehouse to meet the same truck driven by Cerrato, which truck contained 378 kilograms of cocaine.

On December 5, 2002, defendant had expected to meet a truck containing approximately 417 kilograms of cocaine and off-load it at the Jarke warehouse. Defendant later received word that the truck never arrived. DEA agents seized the load on or about December 5, 2002. In all, from June 2002 to July 8, 2003, the organization moved at least 6,000 kilograms of cocaine from Mexico to the Chicago area.

6. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, effective April 30, 2003, the parties agree on the following points and disagree on the following points:

(a) The base offense level is level 38, pursuant to Section 2D1.1(c)(1), because the amount of cocaine involved in the offense of conviction for which the defendant is accountable is more than 150 kilograms.

(b) The government contends that defendant was a manager or supervisor in charged criminal activity, and that the criminal activity involved five or more participants, resulting in a three-level increase in the offense level pursuant to Section 3B1.1(b). The defendant disagrees, and the parties reserve the right to argue their respective positions at sentencing.

(c) Defendant contends that he has clearly demonstrated a recognition and affirmative acceptance of personal responsibility

5

for his criminal conduct and is entitled to a two-level reduction in the offense level, pursuant to Section 3E1.1. The government disagrees, and the parties reserve the right to argue their respective positions at sentencing.

(d) Defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline 3E1.1(b). Accordingly, at the time of defendant's sentencing hearing, so long as the Court determines that Section 3E1.1(a) applies, the government will move for an additional 1-level reduction in the offense level, provided the Court determines the offense level to be 16 or greater prior to the operation of Guideline 3E1.1(a).

(e) The defendant contends that he qualifies for the limitation on the applicability of the statutory minimum sentence in this case, pursuant to Guidelines Sections 5C1.2 and 2D1.1(b)(6). The government disagrees and the parties reserve the right to argue their respective positions at sentencing.

(f) Based on the facts known to the government, defendant's criminal history points equal zero, and defendant's criminal history category is I.

(g) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and are based on facts known to the government as of the time of

this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or the Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

8. Defendant understands the count to which he is pleading guilty carries a statutory minimum penalty, if it applies, of 10 years in prison, a maximum penalty of life imprisonment, and a maximum fine of $4,000,000. Defendant understands that this count also carries a term of supervised release of at least five years, and up to any number of years which the Court may specify, as well as any restitution which the Court shall order.

9. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on the

7

count to which he has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the U.S. District Court.

10. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously, considering each count separately, before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, and considering each count

of the indictment separately, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

11. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence.

9

12. Defendant understands that the indictment is a matter of public record and may be disclosed to any party.

13. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

14. At the time of sentencing, the government is free to recommend a sentence at any point within the applicable guideline range.

15. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the sentencing guidelines, may impose the maximum penalties as set forth in paragraph 8 above. The defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

16. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

17. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea

Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

18. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

19. Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

20. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _4-29-04_

_____
PATRICK J. FITZGERALD
United States Attorney

_____
GUADALUPE CISNEROS-MORA
Defendant

_____
GABRIEL A. FUENTES
Assistant United States Attorney

_____
JOSEPH R. LOPEZ
Attorney for Defendant